IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SEIBENTHAULER LODGE,
    Plaintiff,

vs.                                        No. 17-01180-JTM-KRS

CITY OF CLOVIS, *et al.*,
    Defendants.

MEMORANDUM AND ORDER

    In 2015, plaintiff Seibenthauler Lodge was arrested by officers of the Clovis, New Mexico Police Department on a charge of battery. He has brought the present action alleging false arrest (and other claims) against seven Department officers, the Department itself, and the City of Clovis. The defendants have moved for summary judgment, arguing that they arrest was predicated on probable cause, and that they are protected by qualified immunity. For the reasons explained below, the court grants the defendants' motion.

**Findings of Fact**

    In the early morning hours of November 1, 2015, Clovis Police Department Officers Brice Stacy, Brent Aguilar, Stephen Borders, Douglas Osborn, and Christopher Caron were dispatched to Kathy Drive in Clovis, New Mexico in response to complaints

of a fight. The officers investigated, and learned there had been a physical altercation at a costume party on the 700 block of Kathy Drive.

Ambree Taylor-Hernandez was present near the scene of the fight when the officers arrived and at that time was crying, covered in blood, severely bleeding from the nose, and had a laceration on her nose and swollen right eye which she could not open. Lodge was present near Taylor-Hernandez. He had blood on his clothing and an abrasion on the back of his right hand.

Taylor-Hernandez has stated by affidavit that, on several occasion when spoken to by different officers, she told the officer it was Lodge who had punched her.

Lodge denies striking Taylor-Hernandez. He also cites evidence that Taylor-Hernandez's sister, Lunden Taylor-Hromas told Officers Aguilar and Caron that she believed her sister had been struck by someone in a pink unicorn costume. And, he stresses, he was not wearing such a costume.

The defendants' evidence confirms that the officers officers at the scene noticed that Taylor-Hernandez was covered in blood, bleeding severely from her nose, with a laceration on her nose, and that Lodge had blood on his clothing and an abrasion on the knuckles of his right hand consistent with punching an object.

Lodge disputes this requested finding of fact, complaining the defendants offer no "specific description" of the hand injury, and no expert evidence that the injury is consistent with punching. He offers an alternative explanation. In his version, Taylor-Hernandez attacked him, while her sister struck Lodge's wife to the ground, and avers that "I scraped my hand on the pavement" when helping her up. However, the affidavit

2

evidence does not indicate that Lodge told this to the officers at the time. Further, Lodge's first complaint — that defendants' cited evidence lacks a "specific description" of the hand injury — is answered by himself in his affidavit, where he offers his rationale for "the abrasions to [his] hand." The complaint there is no expert testimony to support a finding that the abrasion was caused by punching a person, misses the point of the defendants' requested fact finding. That is, the evidence is not cited as conclusive proof that Lodge struck Taylor-Hernandez, but simply that, to the officers, it appeared that way.

It is uncontroverted that the officers saw significant amounts of blood in the driveway of the house where the fight had occurred. It is also uncontroverted that Taylor-Hernandez told Officer Borders she saw stars after being hit in the face twice by Lodge.

Based upon their observations during the investigation and the apparent victim's statements, Officers Brice Stacy and Stephen Borders made the decision to arrest Plaintiff on a charge of misdemeanor aggravated battery.

Again, Lodge argues in response that the officers had no reason to arrest him, stressing Taylor-Hromas's suggestion that the man in the pink unicorn costume had struck her sister. But Taylor-Hromas's report is equivocal. She did not personally observe the assault on her sister, and acknowledged, "I did not see who hit my sister. No, I cannot say I did."

The court finds there is no material fact controversy. The officers may have been presented with some evidence which might have supported a different conclusion. But the evidence still strongly pointed towards Lodge. The bloodied, apparent victim repeatedly put the blame on Lodge. The victim had received severe facial injuries. Lodge

3

was covered in blood and had injured his hand in a way suggesting he was responsible for Taylor-Henderson's injuries.

It is uncontroverted that Taylor-Hernandez was transported to Presbyterian Hospital in Clovis, New Mexico where she was diagnosed with right eye trauma, a facial contusion, a nasal laceration, a subarachnoid hemorrhage, and nasal fractures. The hospital found these conditions sufficiently serious to have Taylor-Hernandez flown to the trauma center at UMC Health System in Lubbock, Texas on November 1, 2015 for further evaluation, diagnosis, and treatment.

Lodge now asserts claims against defendants for negligence, malicious prosecution, assault and battery, racial discrimination, wrongful arrest and false imprisonment, and failure to adequately train and supervise in connection with this incident. The defendants move for summary judgment on the basis of qualified immunity.

**Conclusions of Law**

The defendants argue (Dkt. 19, at 6-8) that the officers were acting in their individual capacities and are protected by qualified immunity because they had probable cause to arrest Lodge for misdemeanor aggravated battery pursuant to NMSA § 30-3-5. To establish a claim against a government officer in his personal capacity, the plaintiff must demonstrate that the officer caused the deprivation of a federal statutory or constitutional right while acting under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25

(1991). Unlike government officers who are sued in their official capacity, officers sued in their personal capacity "come to court as individuals." *Id*. at 27.

Under Section 1983, state officials sued in their personal capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). To defeat qualified immunity, a plaintiff faces a "heavy two-part burden" of showing both that (1) the defendants violated a constitutional right, and (2) the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007). The defense in effect protects "all but the plainly incompetent or those who knowingly violate the law." *A.M.*, 830 F.3d at 1134-35 (internal citations and quotations omitted).

At qualified immunity's second step, courts should proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," taking account of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Wilson v. City of Lafayette*, 510 F. App'x 775, 779 (10th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). *See also Saucier v. Katz*, 533 U.S. 194, 205 (2001).

To show a right is clearly established, the plaintiff must point "to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). The law is clearly established if "every reasonable official would have understood that what he" did violated the law. *Ashcroft v. al-Kidd*, ___U.S. ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

In determining whether a right is clearly established, the Supreme Court has repeatedly cautioned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted). "Although [the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal quotation marks and citation omitted). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

A decision to afford an officer qualified immunity is almost always a question of law, to be decided by the court prior to trial. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (10th Cir. 2008). The protection afforded by qualified immunity applies to government officials whether their mistake is one of law or fact – or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to address the requirements of a qualified immunity defense in any order. *Id*. at 236. The plaintiff's failure to establish either of the two requirements is fatal to his claim. *Id*. In determining whether the plaintiff has satisfied the two-pronged qualified immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

However, because the summary judgment stage is "beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary

6

judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). But if the non-movant proves there is a factual dispute involving an issue "on which qualified immunity turns," summary judgment on the basis of qualified immunity is "inappropriate." *Harapat v. Vigil*, 676 F.Supp.2d 1250, 1266 (D.N.M. 2009) (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

An arrest is supported by probable cause "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988))

In responding to the summary judgment motion, Lodge cites a variety of New Mexico cases, the relevance of which is not immediately apparent. *Jones v. Murdoch*, 145 N.M. 473, 200 P.3d 523 (2009) did not address an arrest, but the state's grand jury statute, NMSA 1978, § 31-6-11(B), holding that "fundamental to a reliable indictment is a fair presentation of the evidence upon which the State asks the grand jury to indict." *State v. Chakerian*, 348 P.3d 1027 (N.M. Ct. App. 2015) similarly did not involve the issue of probable cause to support an arrest for assault, but yet another unrelated statute, NMSA § 66-8-109(B), governing persons driving while intoxicated. The court held that statute extended the driver the "right of a reasonable opportunity to arrange for an independent

7

chemical blood test of his own choosing."[1] *Kennedy v. Dexter Consolidated Schools*, 124 N.M. 64, 10 P.3d 115 (2000) also did not involve an alleged illegal arrest, but an action by high school students who had been subjected to strip searches trying to recover a stolen ring. The court held that the nude strip search of minors was contrary to clearly established law, emphasizing that "there was no individualized suspicion in the present case," that "the school officials [did not] rely on the information of an eyewitness," and in any event the naked strip search of minors was excessive in scope. 10 P.3d at 121-22. Finally, *Weinstein v. Sante Fe Police Dep't*, 121 N.M. 646 (1996) is even more unrelated to the issue before the court—how probable cause is to be determined to support an arrest for assault. *Weinstein* did not involve any claim of false arrest, but a claim by a crime victim, who alleged she was raped due to police negligence, when they failed to forward documentation necessary to support the perpetrator's arraignment on earlier charge of rape, thereby permitting his release.

    These cases bear no resemblance at all to the present case, and certainly do not stand for the proposition that Lodge tries to wring from them—namely that probable cause simply cannot exist, no matter how strong the evidence against a suspect (and here there was direct eyewitness testimony from a woman with severe facial injuries that a man had repeatedly punched her, and the defendant was covered in blood and had a

---

[1] Lodge fails to note that the decision was reversed on appeal to the New Mexico Supreme Court, 2018 WL 1007934 (2018).

hand injury consistent with such an assault) if there is some iota of ambiguous evidence (from a non-eyewitness) to the contrary.

Probable cause is not synonymous with proof beyond a reasonable doubt. It requires only that the known facts "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). This is a "a flexible, common-sense standard [which] does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). The officers at the scene had probable cause to arrest the plaintiff.

Certainly as well, Lodge has failed to meet the heavy burden of showing that existing precedent has established beyond debate that the officers' conduct violated any constitutional norm. "[I]n the § 1983 qualified-immunity context, an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses 'arguable probable cause.'" *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (emphasis in *A.M.*). Applying this standard in *Park v. Gaitain*, 680 Fed.Appx. 724 (10th Cir. 2017), the court determined that although the defendant officers lacked actual probable cause to arrest plaintiff for resisting arrest under NMSA § 30-221 (19783), they were still shielded by qualified immunity, stressing there was

9

> no controlling decision from the United States Supreme Court, our court, or New Mexico appellate courts squarely governs whether Defendants lacked probable cause for Mr. Park's arrest under Section 30-22-1(A) or places the resolution of this probable-cause question beyond debate. In particular, the cases from the relevant time period … do not squarely condemn that arrest under the Fourth Amendment, such that we can conclude that Defendants lacked arguable probable cause for Mr. Park's arrest.…
>
> At bottom, Mr. Park cannot supply a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment. No decision would have apprised every objectively reasonable officer that he lacked probable cause under the circumstances of this case to arrest Mr. Park. Consequently, although we now conclude that Defendants lacked probable cause to arrest Mr. Park for violating Section 30-22-1(A), we cannot determine under the particular facts of this case that Mr. Park has carried his burden of demonstrating that Defendants' arrest violated clearly established law.

680 Fed.Appx. at 737-38 (citations and quotations omitted).

Here, as indicated earlier, the cases cited by Lodge certainly do not "squarely govern" arrests under the New Mexico battery statute. The court finds that the balance of information known to the officers, even if it were somehow short of actual probable cause, remains sufficiently strong that the defendants still had arguable probable cause for the arrest. *See, e.g., DaCosta v. Tranchina*, ___ Fed.Appx. __, 2019 WL 4267571 (2d Cir. Sept. 10, 2019) (reversing denial of qualified immunity, and finding that arguable probable cause existed where "one of the witnesses to the robbery … identified DaCosta as the perpetrator," notwithstanding "the misidentification and nonidentification by the other two victims of the robbery").

With respect to the remaining claims, Lodge only argues that dismissal would somehow be procedurally incorrect, because the defendants did not present evidence

10

specifically related to those claims. The court rejects the argument that resolution of those issues is premature. The defendants specifically argued in support of their motion that (1) Lodge's race discrimination claim cannot survive where the only support offered is the fact that he is African-American and there is otherwise no evidence to support the allegation (Dkt. 19, at 9), (2) that the residual individual officer claims are fatally flawed if there was probable cause for the arrest,[2] and (3) the governmental entities cannot be liable for constitutional violations where there was no underlying violation by the officers. *See Jicarilla Apache Nation v. Rio Arriba Cty.*, 376 F.Supp.2d at 1099 (D.N.M. 2004) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Lodge replies to none of these arguments, which were all explicitly raised by the defendants' motion. He fails to show any evidence of racial discrimination, does not provide any reason to believe the secondary tort claims such as false imprisonment survive a finding that the officers had probable cause to arrest him, or give any reason to impose liability on the government entities in light of the other findings of the court.

The court finds that the officers had probable cause to arrest Lodge. The plaintiff has not demonstrated that any constitutional violation occurred, or that, if it did, the violation was contrary to clearly established law. The plaintiff has failed to provide evidence of negligence, racial animus, or other improper motive on the party of any

---

[2] "[A]ll of Plaintiff's claims in this case arise from Defendants' conduct while lawfully carrying out their official law enforcement duties so must be dismissed on summary judgment." (Dkt. 19, at 10).

11

defendant, or shown why, in the absence of any constitutional violation, the governmental entity defendants are subject to liability.

IT IS ACCORDINGLY ORDERED this day of September, 2019, that the defendants' Motion for Summary Judgment (Dkt. 19) is hereby granted.


                                          <u>s/ J. Thomas Marten</u>
                                          J. Thomas Marten, Judge